**Donna LESLIE, Plaintiff,**

v.

**Leonard LACY, et al., Defendants.**

**No. C–2–99–313.**

United States District Court,
S.D. Ohio,
Eastern Division.

March 29, 2000.

Gary M. Smith, Southeastern Ohio Legal Services, New Philadelphia, OH, for Plaintiff Donna Leslie.

Randall L. Lambert, D. Scott Bowling, Lambert & McWhorter, Ironton, OH, for Defendants Pike County, Ohio and John Williams, Clerk of Court.

Jeffrey A. Rodgers, Columbus, OH, for Defendant Leonard Lacy.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Ohio Revised Code § 4505.10(A). This statute permits the lienholder seller of a motor vehicle who repossesses the vehicle to apply to a clerk of court for a certificate of title in the seller's name. A manufactured mobile home falls within the definition of a "motor vehicle" as that

phrase is used in § 4505.10(A). Ohio Revised Code § 4505.01(A)(2).

The plaintiff, Donna Leslie, alleges that she was deprived of her right to procedural due process under the Fourteenth Amendment of the United States Constitution when defendant Leonard Lacy, the lienholder of her manufactured home, obtained a certificate of title for that home from the clerk of court for the Pike County, Ohio Common Pleas Court on December 17, 1998 without prior notice to her or a predeprivation hearing. The plaintiff further alleges that in December of 1998, she learned that she was eligible for Section 8 housing assistance, scheduled to commence in January of 1999. However, since the receipt of such assistance was contingent upon her holding title to her home, she lost her eligibility for such assistance when Lacy transferred the title to his name.[1]

The plaintiff seeks a declaratory judgment for the benefit of herself and others that § 4505.10(A) is unconstitutional on its face and as applied. The plaintiff also seeks money damages for the alleged deprivation of due process, including damages for the loss of Section 8 rental assistance, as well as "any other relief that may be just and equitable." Complaint, Prayer for Relief.

The plaintiff has moved for partial summary judgment on the issue of the constitutionality of § 4505.10(A). Defendants Pike County, Ohio and John Williams, sued in his official capacity as Clerk of Court for the Court of Common Pleas of Pike County, Ohio, have also moved for summary judgment on the plaintiff's § 1983 claim.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The plaintiff contends in her motion for partial summary judgment that Ohio Revised Code § 4505.10(A), insofar as it permits the transfer of title to a motor vehicle, without prior notice or hearing, to the holder of a security interest in the event of repossession, is unconstitutional on its face and as applied. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists

---

1. In addition to the § 1983 claim, the plaintiff also asserted state law claims against defendant Lacy for breach of contract, conversion, and violations of Ohio Revised Code §§ 1309.44 through 1309.50. However, the plaintiff subsequently entered into a settlement with defendant Lacy by signing a cove-

nant not to sue in exchange for the conveyance of the title to the manufactured home back to her and the execution of a new purchase agreement. All claims against defendant Lacy were dismissed on September 28, 1999.

under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). To establish a facial violation, "the debtor has to show that the provisions were wholly inadequate to protect due process rights[.]" *Nelson v. Diversified Collection Services, Inc.*, 961 F.Supp. 863, 868 (D.Md. 1997). "A statute can violate procedural due process rights as applied if the notice and opportunity to be heard either were not provided to the plaintiff or their provision was inadequate." *Id.*

Ohio Revised Code § 4505.10(A) provides in relevant part:

> In the event of the transfer of ownership of a motor vehicle by operation of law, as upon ... repossession is had upon default in performance of the terms of a security agreement as provided in Chapter 1309. of the Revised Code, the clerk of the court of common pleas of the county in which the last certificate of title to the motor vehicle was issued, upon the surrender of the prior certificate of title · or the manufacturer's or importer's certificate, or, when that is not possible, upon presentation of satisfactory proof to the clerk of ownership and rights of possession to the motor vehicle, and upon payment of the fee prescribed in section 4505.09 of the Revised Code and presentation of an application for certificate of title, may issue to the applicant a certificate of title to the motor vehicle. Only an affidavit by the person or agent of the person to whom possession of the motor vehicle has passed, setting forth the facts entitling the person to the possession and ownership, together with a copy of the journal entry, court order, or instrument upon which the claim of possession and ownership is founded, is satisfactory proof of ownership and right of possession.

This statute contains no provision for notice to the record owner or hearing prior to the transfer of title, nor does it include any provision for notice or hearing after the transfer of title.

The facts in this case are not in dispute. The record includes a recitation of facts, Exhibit B to the defendants' motion for summary judgment, which have been stipulated by the parties. The plaintiff entered into an installment sales contract with Lacy for the sale of a manufactured mobile home on May 21, 1996. Under the terms of this contract, which provided for an interest rate of fifteen percent, the plaintiff was obligated to make monthly payments in the amount of $200. A certificate of title for the manufactured home, Exhibit C to the defendants' motion for summary judgment, was issued on May 21, 1996 in the plaintiff's name, with Lacy being listed as the first lienholder. According to the plaintiff's complaint, her monthly payments were sometimes late, but Lacy had a custom of accepting these late payments.

On December 17, 1998, Lacy submitted the original certificate of title along with an application for transfer of title pursuant to § 4505.10(A), a copy of which is included in Defendants' Exhibit B, to the office of defendant Williams. This application includes Lacy's name and address, the notation "-repo-" after the printed words "purchase price", and Lacy's notarized signature attesting that the information on the application was correct. No further affidavit, information or proof of ownership was required under § 4505.10(A) because Lacy submitted the original certificate of title. The Pike County Clerk's Office then transferred title to the manufactured home to Lacy.

The record further indicates that the plaintiff was given no notice or opportunity for a hearing either prior to or subsequent to the transfer of title to her manufactured home to Lacy. Defendant Williams indicated that he and his office do not provide prior or subsequent notice or a hearing to the titled owner in the event of a transfer because § 4505.10(A) does not require such notice or hearing.

■ To prevail on her claim under 42 U.S.C. § 1983, the plaintiff must establish: 1) that she was deprived of a right secured by the federal Constitution or the laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994).

■ The defendants do not contest that the second element has been met here. The transfer of title was performed by a government official, and the act of transferring title was sufficient for state action. *See Caesar v. Kiser*, 387 F.Supp. 645, 647 (M.D.N.C.1975).

■ The plaintiff must also establish that she was deprived of a right secured by the Constitution. The plaintiff alleges that she was deprived of her right to procedural due process. Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process claims require a two-step analysis: first, the court must inquire whether a liberty or property interest exists with which the state has interfered; and second, it must be determined whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 259 (6th Cir.1998).

■ In regard to the first step, procedural due process requirements apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property and liberty. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A § 1983 plaintiff claiming a deprivation of a property interest without due process must first show a protected property interest. *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir.1997). The existence of a property interest for due process purposes depends in large part on state law. *Whaley v. County of Tuscola*, 58 F.3d 1111, 1113–14 (6th Cir.1995). However, whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

The defendants do not contend that the plaintiff here had no property interest in her manufactured home. The plaintiff received a certificate of title to the manufactured home issued in her name, thereby acquiring a right, title, claim or interest in the motor vehicle under the certificate of title laws. *See* Ohio Revised Code § 4505.04. Under Ohio Revised Code § 1302.42(B), the title to the manufactured home passed to the plaintiff when she accepted delivery of the manufactured home from Lacy. Federal courts have concluded that an ownership interest in a motor vehicle constitutes a protected property interest. *See, e.g., Alexandre v. Cortes*, 140 F.3d 406, 410–11 (2d Cir.1998) (plaintiffs had a protected property interest in motor vehicle due to payments made under the purchase agreement even though lienholder had retained title); *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir.1994) (use of motor vehicle constitutes a protected property interest under § 1983); *Propert v. District of Columbia*, 948 F.2d 1327 (D.C.Cir.1991) (plaintiff had a protected property interest in abandoned or junk vehicle).

In regard to the second step, the Supreme Court usually has held that the Constitution requires some kind of a hearing before the state deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "The right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real*

*Property,* 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). *See also Mathews,* 424 U.S. at 333, 96 S.Ct. 893 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)); *Purisch v. Tennessee Tech. Univ.,* 76 F.3d 1414, 1423 (6th Cir.1996) (The "root requirement" of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.") (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (emphasis in original)); *Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir.1994) ("Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing."); *Haverstick Enterprises, Inc. v. Financial Fed. Credit, Inc.,* 803 F.Supp. 1251, 1257 (E.D.Mich.1992) ("A debtor has a right to minimal due process (notice and opportunity to be heard) before a state may assist a secured creditor in repossessing the debtor's property.").

Where state actors are following established state procedures that result in the deprivation of an individual's property, the existence of postdeprivation remedies is ordinarily irrelevant and the requirements of prior notice and opportunity to be heard apply, although a postdeprivation hearing may be adequate where a predeprivation hearing is impossible or impracticable, or there is a necessity for quick action. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

The Supreme Court has addressed the requirements of procedural due process applicable in situations similar to the instant case. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court examined a Florida replevin provision which permitted a court clerk to issue a writ of replevin summarily upon the filing of a court action for repossession, based on conclusory allegations that the lienholder applicant is entitled to possession, and the filing of a security bond. The statute did not provide for prior notice or hearing, which meant that the property owner's only opportunity to contest the seizure of the property was in the trial of the repossession action. The Court also reviewed the validity of a Pennsylvania replevin provision which did not require the initiation of a court action for repossession by the lienholder, thereby placing the burden on the property owner to initiate any postseizure hearing. The Supreme Court stated, 407 U.S. at 80–81, 92 S.Ct. 1983:

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party.

The Court in *Fuentes* noted that even a temporary, nonfinal deprivation of property may be a deprivation in the terms of the Fourteenth Amendment. *Fuentes,* 407 U.S. at 85, 92 S.Ct. 1983. The Court also rejected the argument that no hearing was required because the plaintiffs, who had signed conditional sales contracts, lacked full title to the goods being seized. *Id.* at 86–87, 92 S.Ct. 1983. The Court commented that the plaintiffs, by reason of their agreement to pay a financing charge beyond the basic price of the merchandise and their payment of installment payments, had an interest in continued possession and use of the goods. *Id.* at 86, 92 S.Ct. 1983. The Court further stated that the plaintiffs' right to be heard did not

depend on the ultimate merits of the plaintiffs' defenses to the repossession. *Id.* at 87, 92 S.Ct. 1983.

The Supreme Court in *Fuentes* went on to discuss instances where the need for a predeprivation hearing might be excused, such as where the creditor makes a showing of immediate danger that the debtor will destroy or conceal the disputed goods, but the Court noted that the statutes at issue were not narrowly drawn to cover such an unusual condition. *Id.* at 93, 92 S.Ct. 1983. The Court further stated that the statutes, which permitted a court clerk to summarily issue a writ of replevin,

> abdicate effective state control over state power. Private parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another. No state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark.

The Court went on to hold that the replevin statutes were invalid under the Fourteenth Amendment insofar as they deprived the plaintiffs of possession of their chattels without due process of law in the form of a prior hearing. *Id.* at 96, 92 S.Ct. 1983.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court held unconstitutional a Georgia statute which permitted a writ of garnishment to be issued by a court clerk in pending litigation on an affidavit of the plaintiff or his attorney containing only conclusory allegations, where the filing of a bond was the only method of dissolving the garnishment, and no provision was made for an early hearing. The Court noted that the Georgia statute, which permitted a writ of garnishment to be "issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial offi-cer[,]" resulted in the freezing of a sizable bank account and offended the principles of due process established in *Fuentes.* *Id.* at 601.

The Court addressed the constitutionality of a prejudgment attachment statute in *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). In that case, a Connecticut statute permitted a party to obtain a prejudgment attachment of real estate without prior notice or hearing by submitting a conclusory affidavit that there was probable cause to sustain the validity of the party's claims. The Court found that the statute denied the property owner due process by failing to provide a preattachment hearing without at least requiring a showing of some exigent circumstance, even though the statute provided for a prompt postattachment adversary hearing with notice, judicial review and a double damages action if the original suit was commenced without probable cause. *Id.* at 14–18, 111 S.Ct. 2105. *See also Tri-State Development, Ltd. v. Johnston,* 160 F.3d 528 (9th Cir.1998) (prejudgment attachment with no prior notice or hearing invalid; postdeprivation notice and hearing and posting of bond not sufficient to save statute where party seeking writ was not a lienholder and there were no exigent circumstances).

In *Doehr,* the Court distinguished its earlier opinion in *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), in which the Court upheld a Louisiana statute giving a lienholder the right to apply for a writ of sequestration to forestall waste or alienation of encumbered property, despite the fact that the statute required no predeprivation notice or hearing. However, the Court noted in *Doehr,* 501 U.S. at 15, 111 S.Ct. 2105, that the party applying for the writ in *Mitchell* was a secured creditor, the risk of error was minimal because the likelihood of recovery involved uncomplicated matters that lent themselves to documentary proof, and the plaintiff was required to post a bond.

**1190**

Under the Louisiana scheme, the writ was also issued by a judge, and the statute provided for a prompt hearing after the writ was executed.

The above principles have been applied in a variety of cases involving the seizure of motor vehicles. In *Cortes*, 140 F.3d at 413, the court concluded that a provision authorizing the release of motor vehicles of arrestees to lienholders without prior notice to the arrestees or a hearing violated the Due Process Clause. In *Propert*, 948 F.2d at 1333, the court found that a District of Columbia provision permitting the seizure of alleged junk or abandoned motor vehicles without a preseizure or postseizure hearing was invalid. In *Kutschbach v. Davies*, 885 F.Supp. 1079 (S.D.Ohio 1995), the court held that former Ohio Revised Code § 4507.38, which provided for the seizure of motor vehicles upon the arrest of the driver for certain offenses, was unconstitutional due to the failure to provide for a prompt postseizure hearing at which the owner of the motor vehicle could request its return.

Also of interest are the cases of *Peebles v. Clement*, 63 Ohio St.2d 314, 408 N.E.2d 689 (1980), and *General Electric Credit Corp. of Tennessee v. Hatch*, 3 Ohio App.3d 80, 443 N.E.2d 1054 (1982). In *Peebles*, the Ohio Supreme Court held that Ohio's prejudgment attachment statute, Ohio Revised Code Chapter 2715, was unconstitutional on due process grounds. The Ohio Supreme Court held, *Id.*, syllabus paragraph one, that due process required, at minimum, that the plaintiff post a bond and file an affidavit alleging specific facts based on personal knowledge which form the basis for the seizure, that a judicial officer rule on the sufficiency of the facts, that the seizure be set aside upon the posting of a bond by the defendant, and that an immediate hearing be provided following the seizure. In *Hatch*, an Ohio court of appeals, applying *Fuentes*, held that the prejudgment replevin provisions in Ohio Revised Code Chapter 2737 were unconstitutional. The replevin provision,

Ohio Revised Code § 2737.02, permitted the issuance of an order for delivery of property by a clerk of the court in which the action was brought, upon the filing of an affidavit by the plaintiff or his counsel, and no hearing was afforded either immediately before or after the issuance of the order.

In *Mathews*, 424 U.S. at 335, 96 S.Ct. 893, the Supreme Court identified three factors which must be considered in determining the extent of the process due. In *Doehr*, 501 U.S. at 11, 111 S.Ct. 2105, the Court set forth a modified *Mathews* test to be applied in situations where the state statute provides a mechanism for resolving prejudgment disputes between private parties, noting that the relevant factors are:

> first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews*, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

Applying the first factor to the instant case, the transfer of title under § 4505.10(A) affects significant property interests. Under Ohio law, the certificate of title is a required indicator of ownership. Pursuant to Ohio Revised Code § 4505.04(B), a court may not recognize an individual's right, title, claim or interest in or to a motor vehicle unless ownership is evidenced by a certificate of title, a stipulation of the parties or a document showing a valid security interest. The plaintiff could not sell her manufactured home without a certificate of title in her name, since under Ohio Revised Code § 4505.03, a certificate of title must be delivered to the buyer pursuant to a sale. The transfer

of title would also allow the creditor to resell the vehicle, despite the fact that the buyer, like the plaintiff here, may claim a significant equity interest in the vehicle.

■ The effects of this transfer are as significant, if not more so, than those inherent in attachment, which "ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause." *Doehr,* 501 U.S. at 11, 111 S.Ct. 2105. "[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."*Id.* at 12, 111 S.Ct. 2105.

The transfer of title in this case also affected important interests of the plaintiff because, although classified as a motor vehicle under Ohio law, the plaintiff's manufactured home was her residence. The right to maintain control over one's home has been called "a private interest of historic and continuing importance." *James Daniel Good Real Property,* 510 U.S. at 53–54, 114 S.Ct. 492. As the Supreme Court noted, *Id.* at 54, 114 S.Ct. 492:

> The seizure of a home produces a far greater deprivation than the loss of furniture, or even attachment. It gives the Government not only the right to prohibit sale, but also the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.

The plaintiff also alleges, and the defendants do not dispute, that the transfer in this case prevented her from qualifying for Section 8 housing assistance. Thus, the significance of the debtor's property interests affected by the operation of § 4505.10(A) weighs in favor of the debtor in the due process analysis.

The second factor requires an analysis of the risk of erroneous deprivation and the probable value of additional or alternative safeguards. Under § 4505.10(A), so long as the lienholder submits to the clerk an original certificate of title and an application for the transfer of title consisting of a conclusory affidavit, no more is required. Where the lienholder has the prior certificate of title, no other facts concerning his right to the transfer of title need be submitted. Although § 4505.10(A) provides for a transfer of title upon repossession "upon default in performance of the terms of a security agreement as provided in Chapter 1309. of the Revised Code," there is no requirement that the lienholder provide evidence that he pursued a repossession action pursuant to Chapter 1309. and obtained a judgment, or that he show a factual basis for his right to repossess. In this case, repossession was evidenced solely by the notation "-repo-" on the conclusory sworn application form.

In essence, § 4505.10(A) permits the holder of a security interest to obtain a transfer of title to a motor vehicle without commencing any legal action for repossession, simply by claiming that a repossession has occurred. Even where the lienholder lacks the prior certificate of title and is required to submit an affidavit to establish his right to possession and ownership, together with a copy of a court order or the security agreement showing his interest, no determination based on those facts is made by a judicial officer. Thus, § 4505.10(A) poses a significant risk of error in the transfer of title.

The statute, by failing to provide for a prior hearing, also results in the transfer of title with no consideration being given to any defenses which may be asserted by the buyer/debtor. For example, in this case, the plaintiff alleged that Lacy had a practice of accepting late payments. Under Ohio law, the acceptance of late payments by a creditor who has the statutory or contractual right to repossess estops the creditor from lawfully repossessing the

collateral after subsequent late payments unless the creditor gives notice to the debtor that strict compliance with the time for payment will henceforth be required in order to avert repossession. *See Slusser v. Wyrick,* 28 Ohio App.3d 96, 502 N.E.2d 259 (1986). The lack of prior notice of the application for transfer of title and a prior hearing means that any such defenses which the buyer may assert are not taken into account in determining whether the issuance of a new certificate of title is appropriate.

In addition to the failure to require predeprivation notice or hearing, § 4505.10(A) makes no provision for a postdeprivation hearing or notice of any kind. A buyer in the plaintiff's position may potentially receive no notice of the transfer of title until he attempts to sell the motor vehicle or until the lienholder resells the vehicle and the new owners arrive to take possession. Once the buyer does learn of the transfer, the burden is on the buyer to file a legal action challenging the repossession and transfer of title.

This court rejects the defendants' argument that the fact that a lienholder is reflected on the buyer's certificate of title should constitute sufficient notice of the possibility of a transfer of title under § 4505.10(A). Such "notice" is no substitute for notice of an actual transfer of title which impacts the buyer's rights. The fact that a transfer of title is allowed under § 4505.10(A) does not prepare or warn the buyer against the possibility that an unscrupulous lienholder holding the prior title could obtain a transfer of title simply by claiming in a conclusory affidavit that a repossession had occurred, regardless of whether the buyer was really in default, nor does it alert the buyer that a lienholder who has always accepted late payments could suddenly and without notice change his mind about this practice and apply for a transfer of title. For example, in this case, the plaintiff alleges in her complaint that in December of 1998, she arrived at an agreement with Lacy concerning the status of the purchase agreement, yet Lacy, without notice to the plaintiff, applied for a transfer of title that same month.

The third factor focuses on the interest of the lienholder, as well as any ancillary interest the state may have in providing the procedure or forgoing the added burden of providing greater protections. Here, the security holder has an interest in the motor vehicle. However, this interest in itself is not sufficient to outweigh the buyer's interest in a predeprivation notice and hearing. Circumstances might arise which would excuse the need for predeprivation notice and hearing, such as when the lienholder demonstrates that the buyer is about to destroy or conceal the motor vehicle. However, § 4505.10(A) is not narrowly drawn to meet any such unusual condition. *See Fuentes,* 407 U.S. at 93, 92 S.Ct. 1983. In this case, the risk of destruction or concealment was substantially less since the motor vehicle in question was a manufactured home, and there was no evidence in this case that the plaintiff intended or attempted to move or destroy her manufactured home.

Statutes such as the repossession provision of § 4505.10(A) serve no important governmental or general public interest, but merely allow the summary seizure of possessions or, in this case, the issuance of a new certificate of title, where no more than private gain is at stake. *Fuentes,* 407 U.S. at 92, 92 S.Ct. 1983. The defendants have not identified any significant burdens which would be placed upon the state if the statute were to require predeprivation notice and hearing. The state has offered the use of its judicial system to lienholders to enforce a security interest in goods. *See* Ohio Revised Code § 1309.44. No valid reason has been offered for denying the due process protections afforded by judicial participation to debtors who risk losing title to their motor vehicles.

This court concludes that the repossession provision of § 4505.10(A) does not afford the motor vehicle owner/debtor the

process which is due them under the Constitution, in that the owner/debtor is given no predeprivation notice or hearing prior to the transfer of title to the motor vehicle. Even assuming that postdeprivation notice and hearing would be permissible under exigent circumstances, the statute does not contain an exception for exigent circumstances, nor does the statute provide for postdeprivation notice and hearing. The plaintiff in this case was given no notice or opportunity for a hearing before the title to her manufactured home was transferred to Lacy, nor was she given any prompt postdeprivation notice or hearing. Since the court cannot envision any circumstance in which the statute, as currently worded, would comply with the requirements of due process, the court finds that the repossession provision of § 4505.10(A) is unconstitutional on its face and as applied in this case.

■ Defendants Williams and Pike County contend that they are entitled to qualified immunity. However, the defense of qualified immunity protects only natural person defendants in their individual capacities. *Painter v. Robertson,* 185 F.3d 557, 566 n. 12 (6th Cir.1999). Defendant Williams has been sued in his official capacity only. An official capacity claim filed against a public employee is the equivalent of a lawsuit directed against the public entity that the agent represents. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Claybrook v. Birchwell,* 199 F.3d 350, 355 n. 4 (6th Cir.2000). Where the plaintiff prevails in an official capacity suit, liability is imposed on the entity that the officer represents. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Qualified immunity may not be invoked as a defense by a political entity such as a county. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166–67, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 365 (6th Cir.1993). Thus, the defense of qualified immunity is not available to the defendants in this case.

Pike County also contends that even assuming that the plaintiff's constitutional rights were violated in this case, it is not liable because there has been no showing that the deprivation was the result of any county policy or custom.

■ A political subdivision is not liable under § 1983 unless the deprivation of constitutional rights is caused by a policy or custom of that subdivision. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A single decision by a decisionmaker with final authority in the relevant area may constitute a "policy" attributable to the political subdivision. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A person's status as a final policymaker under § 1983 is a question of state or local law. *Id.* at 483, 106 S.Ct. 1292.

There is no question that defendant Williams had a custom or policy of transferring titles to motor vehicles pursuant to the provisions of § 4505.10(A). The issue presented by this case is whether he did so as a policymaker for Pike County or for the state of Ohio. If he acted as a representative or agent of the state and not Pike County, then the county cannot be held liable under § 1983. Further, if defendant Williams acted as an agent of the state, then the plaintiff's claims for monetary damages against defendant Williams in his official capacity as a state agent and against the state are barred by the Eleventh Amendment. *See Welch v. Texas Dept. of Highways & Public Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Graham,* 473 U.S. at 169, 105 S.Ct. 3099; *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *See also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)

(state not a "person" subject to suit under § 1983). However, any claim for declaratory and prospective injunctive relief against defendant Williams in his official capacity would survive. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Wilson–Jones v. Caviness*, 99 F.3d 203 (6th Cir.1996); *Williams v. Commonwealth of Kentucky*, 24 F.3d 1526 (6th Cir.1994).

The framework for determining whether an official is a policymaker for a government entity was discussed by the Supreme Court in *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Under *McMillian*, the first inquiry is whether the government official is a final policymaker for the political unit in a particular area, or on a particular issue. *Id.* at 785, 117 S.Ct. 1734. Here, the question is whether defendant Williams represents the state or the county when he transfers title to a motor vehicle under § 4505.10(A). *McMillian* further instructs that the function of a government official in a particular area will depend on the definition of the official's functions under relevant state law. *Id.* at 786, 117 S.Ct. 1734. In *McMillian*, the Supreme Court concluded that Alabama sheriffs acted as representatives of the state, not their counties, when executing their law enforcement duties. *Id.* at 793, 117 S.Ct. 1734.

▉ Under Ohio law, the clerks for the courts of common pleas are elected officials in each county. Ohio Revised Code § 2303.01. Ohio Revised Code § 2303.26 provides: "The clerk of the court of common pleas shall exercise the powers conferred and perform the duties enjoined upon him by statute and by the common law; and in the performance of his duties he shall be under the direction of his court." Ohio Revised Code § 2303.26. Thus, the common pleas clerks of court operate under the authority of the common pleas courts in their respective counties, not under the authority of their counties or the county commissioners.

The Sixth Circuit has held that the courts of common pleas in Ohio are not segments of county government, but are arms of the state for purposes of § 1983 liability and the Eleventh Amendment. *Mumford v. Basinski*, 105 F.3d 264 (6th Cir.1997). It logically follows that the clerks of court, who operate under the authority of the common pleas courts, are likewise arms of the state of Ohio for purposes of § 1983 liability, at least when they conduct the business of the court or other duties mandated by state law.

Even more relevant is the fact that the clerks of court derive their obligation and authority to transfer motor vehicle titles from state law, specifically, § 4505.10(A). This provision and other provisions of the Ohio motor vehicle certificate of title laws have been held to constitute "an authorized exercise of police power on the part of the General Assembly[.]" *State ex rel. City Loan & Savings Co. v. Taggart*, 134 Ohio St. 374, 17 N.E.2d 758, syllabus, 134 Ohio St. 374, 17 N.E.2d 758 (1938).

The Ohio General Assembly has established the Bureau of Motor Vehicles to be administered by a registrar of motor vehicles. Ohio Revised Code § 4501.02(A). Ohio law provides that the "registrar shall administer the laws of the state relative to the registration of and certificates of title for motor vehicles[.]" § 4501.02(A).

An application for a certificate of title must be filed with the clerk of the court of common pleas of the county in which the applicant resides. Ohio Revised Code § 4505.06(A). The registrar is charged with issuing "rules as the registrar determines necessary to ensure uniform and orderly operation of this chapter, and the clerks of the courts of common pleas shall conform thereto." Ohio Revised Code § 4505.02. The application for a certificate of title must be "in a form prescribed by the registrar of motor vehicles[.]" Ohio Revised Code § 4505.06(A). The form of the certificate is regulated by state law, as is the manner in which the clerk issues the

certificates. *See* Ohio Revised Code §§ 4505.07 and 4505.08.

When a transfer of title to a motor vehicle is sought under § 4505.10(A), the provision at issue in this case, the decision of the clerk on the issue of ownership is not final. Under that statute, "[i]f the applicant cannot produce that proof of ownership, the applicant may apply directly to the registrar of motor vehicles and submit the evidence the applicant has, and the registrar, if the registrar finds the evidence sufficient, then may authorize the clerk to issue a certificate of title." § 4505.10(A).

Under Ohio Revised Code § 2303.29, a clerk of court may request funds from the county commissioners to cover the costs associated with his administration of his responsibilities under the certificate of title laws, and the commissioners are obligated to appropriate funds for the clerk's office in an amount sufficient for the prompt discharge of the clerk's duties under Ohio Revised Code Chapter 4505. However, in *McMillian*, 520 U.S. at 791, 117 S.Ct. 1734, the Supreme Court concluded that the fact that the sheriff's salary and funds for the operation of his office were paid from the county treasury was not sufficient to find that the sheriff, in performing his law enforcement duties, was acting as an agent of the county. Further, a similar duty to fund operations was actually noted by the court in *Mumford*, 105 F.3d at 269, as constituting further support for the conclusion that the Ohio common pleas courts are arms of the state.

A local government official pursues his duties as a state agent when enforcing state law or policy. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir.1993). Where the local official was acting on behalf of the state, his action cannot be attributed to the local government entity under *Monell. Id.* at 659, 98 S.Ct. 2018. An examination of the Ohio statutory scheme for the issuance of certificates of title for motor vehicles reveals that this is a matter within the control of the state. The counties have no role in the issuance or regulation of certificates of title for motor vehicles. The Ohio General Assembly, by statute, has designated the clerks of court in each county in Ohio to perform the largely ministerial tasks associated with the issuance of certificates of title in accordance with state law. In the matter of the transfer of title under § 4505.10(A), the clerk does not have ultimate decisionmaking authority regarding the ownership of the motor vehicle. Rather, a determination on that issue may be sought from the registrar, the state official who, by statute, supervises the clerks in the issuance of certificates of title.

The record indicates that defendant Williams was simply following the provisions of § 4505.10(A) in transferring the title of the plaintiff's manufactured home to Lacy. Any policy he or his office followed in the matter of the transfer of certificates of title mirrored the requirements of the statute. There is no evidence that he was acting in furtherance of any county policy.

This court concludes that defendant Williams was acting as an agent of the state in transferring the title of the plaintiff's manufactured home to Lacy, not pursuant to any policy of Pike County. The actions of defendant Williams cannot be attributed to Pike County under *Monell*, and Pike County is entitled to summary judgment. Since defendant Williams was acting as an agent of the state, the plaintiff's claim for monetary damages against defendant Williams in his official capacity is not cognizable under § 1983, *Will*, 491 U.S. at 71, 109 S.Ct. 2304, and defendant Williams is entitled to summary judgment on that claim.

In conclusion, the plaintiff's motion for partial summary judgment is granted. The plaintiff is hereby awarded a declaratory judgment as follows:

The court hereby enters a declaratory judgment that the repossession provision of Ohio Revised Code § 4505.10(A),

which permits a clerk of the court of common pleas, upon application of a holder of a security interest claiming to have repossessed a motor vehicle in which he has a security interest, to issue a new certificate of title for the motor vehicle without prior notice to the motor vehicle owner/debtor and opportunity for a prior hearing, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, on its face and as applied in this case. This judgment does not apply to the issuance of a new certificate of title under § 4505.10(A) where the holder of the security interest presents as proof of ownership and right to possession an order or judgment of a court awarding rights of ownership to the lienholder which reflects that the motor vehicle owner/debtor was given prior notice and the opportunity for a judicial hearing at which the owner/debtor could assert defenses.

The motion of defendant Pike County for summary judgment is granted for the reasons discussed above. The clerk will enter final judgment in favor of defendant Pike County on the plaintiff's § 1983 claim.

The motion of defendant Williams for summary judgment is granted as to the plaintiff's claim for money damages under § 1983, and the clerk will enter final judgment in favor of defendant Williams on the plaintiff's § 1983 claim for money damages. The motion of defendant Williams for summary judgment is otherwise denied. Defendant Williams is hereby permanently enjoined from implementing the current repossession provision in Ohio Revised Code § 4505.10(A), except insofar as the holder of the security interest presents as proof of ownership and right to possession an order or judgment of a court awarding rights of ownership to the lienholder which reflects that the motor vehicle owner/debtor was given prior notice and the opportunity for a judicial hearing at which the owner/debtor could assert

defenses. The clerk is directed to enter final judgment in favor of the plaintiff on the plaintiff's § 1983 claims for declaratory and injunctive relief.

In keeping with this court's order of September 28, 1999, the judgment shall reflect that the claims against defendant Lacy have been dismissed.