[Cite as *Kasha Foods, L.L.C. v. Diamantopoulos*, 2024-Ohio-2962.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

KASHA FOODS, LLC,

    PLAINTIFF-APPELLANT,

  v.

FOTIS DIAMANTOPOULOS, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 13-24-04

O P I N I O N

Appeal from Seneca County Common Pleas Court
Trial Court No. 23 CV 0053

**Judgment Affirmed**

**Date of Decision:  August 5, 2024**

APPEARANCES:

    *James W. Fruth* **for Appellant**

Case No. 13-24-04

**MILLER, J.**

{¶1} Plaintiff-Appellant, Kasha Foods, LLC ("Kasha") appeals a judgment entry issued by the Seneca County Court of Common Pleas on January 4, 2024. The judgment entry denied Kasha's motion for a court order directing the Seneca County Clerk of Courts to issue a certificate of title for a food truck (the "Vehicle"). Kasha argues the trial court erred in its reason for denying the motion and asks that we direct the clerk to issue the certificate of title. For the reasons that follow, we affirm the trial court's denial of the motion and requested relief.

## I.    FACTS AND PROCEDURAL HISTORY

{¶2} On February 27, 2023, Kasha filed a complaint against four related parties (collectively, "Defendants"): Fotis Diamantopoulos ("Diamantopoulos"); MTS National, LLC ("MTS National"); K-Pita Joint Venture, LLC ("K-Pita"); and MFT Operations, LLC ("MFT Operations"). On August 23, 2023, the trial court entered a judgment entry that made certain findings of fact and conclusions of law, including:

- "On or about September 26, 2021, Defendants entered into a Secured Promissory Note and Security Agreement with Kasha."

- "Kasha fully performed its obligations, loaning $180,000.00 to Defendants . . . "

- "The parties agreed that the Secured Promissory Note was to be secured by collateral, including a 2004 Freightliner, VIN No. 4UZAAPBWX4CN49443 (the 'Vehicle') and by after-acquired property."

- "Defendants breached the Secured Promissory Note by failing to pay Kasha Foods, LLC $180,000.00, failing to record the title for the Vehicle, and failing to cooperate in recording a lien on the title for the Vehicle in favor of Kasha. Defendants failed to make any payments on the loan."

(Aug. 23, 2023 Judgment Entry). The trial court ordered that judgment be granted in favor of Kasha and against Diamantopoulos and MTS National, jointly and severally, in the total amount of $370,862.76.[1]

**{¶3}** The Secured Promissory Note and Security Agreement states that the note is secured by the Vehicle, "[a]ll after-acquired equipment," and "[a]ll after acquired inventory." (Secured Promissory Note and Security Agreement, § 1 ¶ 17). The agreement also defines the term "collateral" as including all "motor vehicles of Borrower whether now owned or subsequently acquired" and states that, "[o]n default of this Note . . . Lender will have the same rights and remedies with respect to the collateral as does a secured party under the Ohio Uniform Commercial Code." (*Id.* at § 3, 8).

**{¶4}** On November 17, 2023, Kasha filed the motion at issue (the "Motion"). In the Motion, Kasha "move[d] for an Order directing the Seneca County Clerk of Courts, Auto Title Division to issue, pursuant to R.C. § 4505.10, a motor vehicle certificate of title in the name of [Kasha] as true and lawful owner of" the Vehicle.

---

[1] Although the trial court granted Kasha default judgment against Diamantopoulos and MTS National, it did not grant default judgment against K-Pita or MFT Operations. Both of those parties were dismissed from the case for want of prosecution. (*See* May 26, 2023 Judgment Entry).

The Motion's only reference to a statute or other legal authority is to R.C. 4505.10. Accompanying the Motion is an affidavit that states the Vehicle "is now in Kasha's possession and control" and that "Kasha came into possession and control of the vehicle on December 28, 2022 by lawfully repossessing the vehicle as secured collateral pursuant to § 1309.609(B) of the Ohio Revised Code, following Defendants' default and breach of the Secured Promissory Note designating the vehicle as collateral." (Affidavit in Support of Motion). Attached to the affidavit is a Virginia certificate of title that appears to show the Vehicle was titled to MTS National on January 31, 2022 and there are no liens on the Vehicle.

**{¶5}** On January 4, 2024, the trial court denied the Motion in a short judgment entry. This appeal followed.

## II.    ASSIGNMENTS OF ERROR

Kasha raises four assignments of error for our review:

### First Assignment of Error

**The trial court erred in its Judgment Entry, dated January 4, 2024 by denying the Plaintiff's Motion for Court Order Directing the Clerk to Issue a Certificate of Title to Motor Vehicle.**

### Second Assignment of Error

**The Court erred by determining that the collateral provision of the parties was an unenforceable agreement because the Court failed to address or consider the After-Acquired Property Provision or Definition of Collateral of the parties' Secured Promissory Note and Security Agreement.**

**Third Assignment of Error**

**The trial court erred by misstating the law applicable to secured transactions when holding that "[A] party cannot use as collateral any property in which it is not in legal possession."**

**Fourth Assignment of Error**

**The trial court erred by not applying the provisions of R.C. Chapter 1309 governing secured transactions when it determined the collateral provision of the parties was not an enforceable agreement.**

## III.    DISCUSSION

{¶6} In its appellate brief, Kasha does not separately address each of its four assignments of error.  Instead, it addresses all of them together.  Kasha argues that it had an enforceable security interest in the Vehicle, the trial court misstated the law and erroneously determined the collateral provision was an unenforceable agreement, and the trial court erred in denying the Motion.  Kasha asks us to reverse the trial court's judgment entry and "direct the Seneca County Clerk of Courts to issue a Motor Vehicle Title in the name of Kasha Foods, LLC or remand the matter to the trial court to direct the Clerk accordingly."  (Appellant's Brief at 15).

### A.    Standard of Review

{¶7} Kasha argues that the trial court misapplied the law.  Therefore, our review of the trial court's application of the law is de novo.  *See Robson v. Discount Drug Mart, Inc.*, 2023-Ohio-3291, ¶ 53 (9th Dist.); *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992) ("[i]n contrast to determinations of

fact which are accorded considerable deference, questions of law are examined by this court de novo").

### B. Assessment of the Trial Court's Basis for Denying the Motion

**{¶8}** We find the trial court's reason for denying the Motion was based on a faulty premise. In its judgment entry the trial court stated:

> A party cannot use as collateral any property in which it is not in legal possession. '[N]or shall any person . . . buy or otherwise acquire a motor vehicle without obtaining a certificate of title for it in the person's name . . . ' *See* Section 4505.03 of the Ohio Revised Code.

> Because the Certificate of Title for the 2004 Freightliner was never titled to MFT Operations, LLC, and because both parties knew at the time of the execution of their security agreement that MFT Operations, LLC did not have ownership of the collateral, the collateral provision of the parties is an unenforceable agreement.

(Jan. 4, 2024 Judgment Entry). The trial court therefore denied the Motion.

**{¶9}** The Ohio Uniform Commercial Code ("UCC") does not bar a security agreement from creating or providing for a security interest in after-acquired collateral. R.C. 1309.204; *see also* R.C. 1309.203 (explaining when a security interest attaches and the enforceability of a secured interest); R.C. 1309.201(A) (except as otherwise provided in the UCC, "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors"). In fact, the UCC specifically provides:

> (A) Except as provided in division (B) of this section, a security agreement may create or provide for a security interest in after-acquired collateral.

-6-

(B) A security interest does not attach under a term constituting an after-acquired property clause to:

(1) Consumer goods other than accessions when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value; or

(2) A commercial tort claim.

(C) A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles, or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant to commitment.

R.C. 1309.204. Thus, with certain limitations, the UCC allows a secured creditor the ability to take a security interest in after-acquired property. *Id.* Furthermore, "a security interest arising by virtue of an after-acquired property clause is no less valid than a security interest in collateral in which the debtor has rights at the time value is given," and "[n]o further action by the secured party—such as a supplemental agreement covering the new collateral—is required." *Id.* at Official Comment 2.

{¶10} The Vehicle—a food truck used in the parties' joint venture—does not qualify as "consumer goods" or a "commercial tort claim," under the exceptions in R.C. 1309.204(B). *See* R.C. 1309.102(23) (defining "[c]onsumer goods" as "goods that are used or bought for use primarily for personal, family, or household purposes"). It follows that we disagree with the trial court's statement that "the collateral provision of the parties is an unenforceable agreement," which was the trial court's basis for denying the Motion.

### C.    Assessment of Kasha's Motion and Requested Relief

{¶11} While we disagree with the trial court's reason for denying the Motion, we agree that Kasha did not show it is entitled to the relief sought.  Thus, although Kasha is not necessarily precluded from obtaining a certificate of title to the Vehicle, the trial court did not err in denying the Motion.

{¶12} Kasha's Motion moved the trial court to order the clerk to issue a certificate of title "pursuant to R.C. 4505.10."  That statute provides:

> In the event of the transfer of ownership of a motor vehicle by operation of law, as upon inheritance, devise, bequest, order in bankruptcy, insolvency, replevin, or execution sale, a motor vehicle is sold to satisfy storage or repair charges, or repossession is had upon default in performance of the terms of a security agreement as provided in Chapter 1309. of the Revised Code and the secured party has notified the debtor as required by division (B) of section 1309.611 of the Revised Code, *a clerk of a court of common pleas*, upon the surrender of the prior certificate of title or the manufacturer's or importer's certificate, or, when that is not possible, upon presentation of satisfactory proof to the clerk of ownership and rights of possession to the motor vehicle, and upon payment of the fee prescribed in section 4505.09 of the Revised Code and presentation of an application for certificate of title, may issue to the applicant a certificate of title to the motor vehicle. Only an affidavit by the person or agent of the person to whom possession of the motor vehicle has passed, setting forth the facts entitling the person to the possession and ownership, together with a copy of the journal entry, court order, or instrument upon which the claim of possession and ownership is founded, is satisfactory proof of ownership and right of possession. *If the applicant cannot produce that proof of ownership, the applicant may apply directly to the registrar of motor vehicles* and submit the evidence the applicant has, and the registrar, if the registrar finds the evidence sufficient, then may authorize a clerk to issue a certificate of title. *If the registrar finds the evidence insufficient, the applicant may petition the court of common pleas for a court order* ordering the clerk to issue a certificate of title. The court shall grant or deny the petition

based on the sufficiency of the evidence presented to the court. If, from the records in the office of the clerk involved, there appears to be any lien on the motor vehicle, the certificate of title shall contain a statement of the lien unless the application is accompanied by proper evidence of its extinction.

(Emphasis added.) R.C. 4505.10(A).[2] The statute provides that a clerk of a court of common pleas may issue a certificate of title to a motor vehicle if certain requirements are met. *Id.*; *see also Leslie v. Lacy*, 91 F.Supp.2d 1182, 1184 (S.D. Ohio 2000) (R.C. 4505.10(A) "permits the lienholder seller of a motor vehicle who repossesses the vehicle to apply to a clerk of court for a certificate of title in the seller's name"). Additionally, if the applicant cannot produce to the clerk satisfactory proof of ownership, then the applicant may apply directly to the registrar of motor vehicles. If the registrar of motor vehicles finds the evidence of ownership sufficient, then it may authorize a clerk to issue a certificate of title. If the registrar finds the evidence insufficient, then, the applicant may petition the common pleas court for an order directing the clerk to issue a certificate of title.

{¶13} The record does not show that Kasha employed the remedies contained within R.C. 4505.10(A) that are a prerequisite to petitioning the trial court to order the clerk to issue a title to the vehicle. Kasha has not shown that the clerk of courts declined to issue a title or that the registrar found Kasha's proof of

---

[2] The other subsections of the statute are clearly inapplicable as they involve transferring a decedent's interest in a vehicle to a surviving spouse, transferring interest in a motor vehicle upon the death of a person who had joint ownership of a vehicle, or transferring a vehicle designated in a beneficiary form upon the death of its owner. R.C. 4505.10(B)-(D).

ownership insufficient. R.C. 4505.10(A). Additionally, to the extent there is any recognized exception to these prerequisites, Kasha likewise has not shown that any such exception applies.

{¶14} Therefore, the trial court did not err in denying the Motion. We express no opinion concerning whether Kasha has met any of the other requirements set forth in R.C. 4505.10.

## IV.    CONCLUSION

{¶15} For the foregoing reasons, we overrule Appellant's assignments of error. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Seneca County Court of Common Pleas to deny Appellant's November 17, 2023 motion.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlm**