[Cite as *Hamilton v. Ohio Dept. of Health*, 2015-Ohio-4041.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Edward Hamilton, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-1035 |
| v. | : | (C.P.C. No. 11CVH-13646) |
| Ohio Department of Health et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 30, 2015

*Edward Hamilton*, pro se.

*Michael DeWine*, Attorney General, and *Melissa L. Wilburn*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Edward Hamilton, appeals the November 21, 2014 decision and entry of the Franklin County Court of Common Pleas granting the motion to dismiss filed by defendants-appellees, Ohio Department of Health and its director ("ODH"), and denying appellant's motion for leave to file a second amended complaint. For the following reasons, we affirm the judgment of the trial court.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case concerns the standing of appellant to challenge in a civil action for declaratory and injunctive relief a rule promulgated by ODH that alters certain eligibility protocols, if Ohio's "Ryan White Part B" program suffers a future funding shortfall.

{¶ 3} Ohio's Ryan White Part B program, which includes the Ohio HIV Drug Assistance Program ("OHDAP"), arose under the federal Ryan White Act "Part B - Care

Grant Program."  42 U.S.C. 300ff-21.  Part B permits the federal government, "subject to the availability of appropriations," to provide grants to enable applicant states "to improve the quality, availability and organization of health care and support services for individuals and families with HIV/AIDS."  Applicant states must provide an assurance that the state will, "to the maximum extent practicable, ensure that HIV-related health care and support services delivered pursuant to a program established with assistance * * * provided without regard to the ability of the individual to pay for such services and without regard to the current or past health condition of the individual with HIV/AIDS."  42 U.S.C. 300ff-27(b)(7)(B)(i).  A state may use the grants to support core medical services, including drug assistance programs, as well as certain support services and administrative expenses.

{¶ 4}  The Ohio legislature charged ODH with administering the Ohio Ryan White Part B program, and in R.C. 3701.241(D) allows its director discretion to adopt rules and issue orders as necessary for administration of the funds.  In September 2011, appellees began the administrative rule-making process to revise the code section pertaining to eligibility for benefits under the Ohio Ryan White Part B program, now numbered Ohio Adm.Code 37o1-44-03.

{¶ 5}  The two appendices which support Ohio Adm.Code 37o1-44-03 are central to this appeal.  Appendix A establishes medical guidelines to determine the priority in which an applicant would receive OHDAP services, including access to medications, if a waiting list forms due to insufficient funds.[1]  Appendix B provides the director of ODH

---

[1] Ohio Adm. Code 37o1-44-03, Appendix A: Medical Guidelines, reads:

> These additional medical guidelines only apply to applications to the Ohio HIV Drug Assistance Program (OHDAP).
> When OHDAP has a waiting list for program enrollment and subject to sufficient funding, applicants to the Ryan White Part B programs must meet one of the following medical guidelines to be eligible for expedited enrollment:
> 1. Pregnant women who meet all OHDAP eligibility criteria and who are not eligible for other programs which provide antiretroviral (ARV) medications.
> 2. Post partum women (women who [have] given birth within 180 days prior to applying to OHDAP) who meet all OHDAP eligibility criteria and who are not eligible for other programs which provide antiretroviral (ARV) medications.

with discretion to reduce the maximum gross family income threshold from 300 percent of the federal poverty level ("FPL") to no less than 100 percent of the FPL, if there is insufficient funding to sustain current services of the program.[2]

---

> If the OHDAP is able to enroll some but not all individuals from the waiting list (based on insufficient funds), applications from individuals who meet all OHDAP eligibility criteria and who are not eligible for other programs which provide ARV medications will be prioritized as follows:
>
> Priority 1: Individuals with HIV and other extreme medical conditions such as, but not limited to, HIV-associated nephropathy or HIV related dementia. The applicant's HIV-treating physician or nurse practitioner shall complete a medical waiver request consistent with section 3701-44-04 of the Ohio Administrative Code.
>
> Priority 2: Individuals with a history of AIDS-defining illness [see paragraph (C) of Appendix A to section 3701-3-12 of the Ohio Administrative Code for indicator diseases diagnosed definitively] and/or a nadir CD4 count of less than or equal to 200 cells/mm³ (or less than 14%).  Documentation shall be provided by the HIV-treating physician or nurse practitioner evidencing how the individual meets this priority.
>
> Priority 3: Individuals with HIV and a nadir CD4 count between 201-350 cells/mm³.  Documentation shall be provided by the HIV-treating physician or nurse practitioner evidencing how the individual meets this priority.
>
> Priority 4: Individuals with HIV and a nadir CD4 count between 351-500 cells/mm³.  Documentation shall be provided by the HIV-treating physician or nurse practitioner evidencing how the individual meets this priority.
>
> Priority 5: Individuals with HIV and a nadir CD4 count above 500 cells/mm³.  Documentation shall be provided by the HIV-treating physician or nurse practitioner evidencing how the individual meets this priority.
>
> Individuals on the waiting list should notify OHDAP if there is deterioration in their health.  Individuals who submit documentation by the HIV-treating physician or nurse practitioner evidencing how the individual meets one of the above listed priorities will move to the appropriate priority while retaining their original waiting list date.

[2] Ohio Adm.Code 37o1-44-03, Appendix B: Financial Eligibility Guidelines for OHDAP/HIPP/ Spenddown, reads:

> Applicants to the Ryan White Part B programs must meet the following financial guidelines to be eligible:
>
> 1. The individual or individual's family gross income must be equal to or less than three hundred percent (300%) of the Federal Poverty Level (FPL) as published in the Federal Register on or before the first of April of each calendar year.
>
> 2. The calculation shall exclude taxes and any mandatory retirement deduction.
>
> Eligibility in Ryan White Part B programs is subject to sufficient funding. Pursuant to division (D) of section 3701.241 of the Revised Code and paragraph (C) of this rule, if there is insufficient funding to sustain current services, the director may, at any time and as necessary for the

{¶ 6}  On November 2, 2011, appellant filed a complaint asking the court to declare Ohio Adm.Code 3701-44-03 unenforceable as proposed and asking the court for temporary, preliminary, and permanent injunctive relief to enjoin ODH from enforcing the rule. Appellant contended that Appendices A and B amounted to a material modification of the new rule that necessitated another public hearing under the rule-making process in Chapter 119 of the Revised Code.  The trial court issued an order temporarily restraining ODH from enforcing or implementing the proposed rule until the court resolved whether to grant declaratory or injunctive relief.

{¶ 7}  A few weeks later, the trial court granted appellant's motion for a preliminary injunction, enjoining the rule from taking effect until appellees held a public hearing in compliance with Chapter 119 of the Revised Code.  Analyzing the "irreparable harm" element of injunction, the trial court found "[a]t this juncture, [appellant] merely seek[s] a[n] R.C. 119.03 public hearing by which [he] may voice [his] opinion on this new rule. * * * The disenfranchisement of an affected person to be heard on new rules that would substantially change his or her life constitutes irreparable harm."  (Nov. 29, 2011 Entry Granting Preliminary Injunction, 9-10.)

{¶ 8}  On August 27, 2012, appellees filed a notice of compliance with the court's order to properly promulgate the rule under R.C. 119 processes and filed a motion to dismiss asserting a lack of controversy.  That same day, appellant filed a motion to file an amended complaint and a motion for a temporary restraining order.

{¶ 9}  On August 28, 2012, the trial court denied appellees' motion to dismiss, granted appellant leave to file an amended complaint, and denied appellant's motion for a temporary restraining order, stating: "[a] temporary restraining order contemplates a situation where there is an unusual emergency with the imminent threat of harm that requires immediate court consideration. The Court finds that [appellant] failed to satisfy the necessary elements set forth in Civ.R. 65(A) for a temporary restraining order." (Aug. 29, 2012 Order and Entry, 1-2.)  Ohio Adm.Code 3701-44-03 became effective August 30, 2012.

---

effective administration of available funds, issue an order, reducing the maximum gross family income set forth in this appendix for some or all Ryan White Part B programs, but at no time shall the maximum be less than 100% of the FPL.

{¶ 10} In the amended complaint, the touchstone for this appeal, appellant asserts an action to declare Ohio Adm.Code 37o1-44-03 unlawful and to enjoin its enforcement due to the rule's violation of the Ohio Administrative Procedures Act, the Ryan White Act, the Rehabilitation Act, the American with Disabilities Act ("ADA"), and both the Ohio and U.S. Constitutions. The amended complaint states that appellant resides in Franklin County, Ohio, has a verified HIV infection, and currently receives benefits under the Ryan White Part B Program. The amended complaint also describes the medications funded by the program as "potentially life-saving" and potentially costing "as much as $10,000-$40,000 per year, per patient." (Aug. 27, 2012 Verified Amended Complaint, 1, 3.)

{¶ 11} On September 28, 2012, appellees filed a motion to dismiss the amended complaint based, in part, on Civ.R. 12(B)(1) for lack of jurisdiction and Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted. On October 25, 2012, appellant filed a motion for leave to file a second amended complaint and, the next day, filed a memorandum in opposition to appellees' motion to dismiss. Appellees filed a reply to appellant's memorandum in opposition to the motion to dismiss on November 2, 2012, and a memorandum contra to appellant's motion for leave to file a second amended complaint on November 8, 2012.

{¶ 12} On April 1, 2013, the parties jointly moved the court to stay the proceedings pending a status conference with the court in November of that year to discuss the future "unknown" status of OHDAP in light of the Affordable Care Act. The trial court granted the parties' motion to stay and, after the November status conference, also granted the parties' request to continue the stay until further order of the court.

{¶ 13} On November 21, 2014, the trial court granted appellees' motion to dismiss based on Civ.R. 12(B)(6) and denied appellant's motion for leave to file a second amended complaint. In so holding, the trial court found that appellant alleged only "a *potential* injury based upon [appellees'] *conceivable* response to a *possible* scenario (insufficiency of funds) outside of [appellant's] *and* [appellees'] control" and, as such, did not assert a specific injury that could be redressed by a court decision. (Emphasis sic.) (Nov. 21, 2014 Decision and Entry, 4.) As an additional basis to grant the motion to dismiss, the court also determined that the claims presented by appellant were not yet ripe for review. Finally, the trial court determined that the new information in appellant's proposed

second amended complaint, relevant to whether appellant was an "applicant" subject to Appendix A, nonetheless did "not cure [appellant's] standing problem." (Nov. 21, 2014 Decision and Entry, 6.)

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant presents three assignments of error for our review:

> I. THE TRIAL COURT ERRED AND HAD ABUSED ITS DISCRETION IN GRANTING DEFENDANT-APPELLEE OHIO DEPARTMENT OF HEALTH'S MOTION TO DISMISS BY CONCLUDING THAT THE PLAINTIFF-APPELLANT LACKED STANDING TO BRING A CAUSE OF ACTION BASED ON A LACK OF INJURY WHEN APPELLANT HAS STANDING TO REQUEST DECLARATORY RELIEF.
>
> II. THE TRIAL COURT ERRED AND HAD ABUSED ITS DISCRETION BY ALLOWING THE REPROMULGATED RULES CREATED BY AN ABUSE OF AGENCY DISCRETION TO REMAIN IN EFFECT THAT CONFLICT WITH AND VIOLATE THE AMERICAN WITH DISABILITIES ACT, REHABILITATION ACT, DUE PROCESS CLAUSES OF THE OHIO AND U.S. CONSTITUTION, RYAN WHITE TREATMENT AND MODERNIZATION ACT OF 2009, AND THE OHIO ADMINISTRATIVE PROCEDURES ACT.
>
> III. THE TRIAL COURT HAD COMMITTED A PRO-CEDURAL ERROR AND HAD ABUSED ITS DISCRETION IN ITS DETERMINATION THAT THE COURT HAD INSTRUCTED THE PLAINTIFF THAT IT WAS WAITING FOR INFORMATION ON POSSIBLE INJURY WHEN IN FACT ALL PARTIES HAD KNOWN THAT THIS CAUSE OF ACTION WAS DECLARATORY IN NATURE AND NOT RULING ON ALL PREVIOUS PENDING MOTIONS IN AT [sic] TIMELY MANNER.

## III. DISCUSSION

### A. Standard of Review

{¶ 15} Whether a party has established standing to bring an action before the court is generally a question of law reviewed de novo on appeal. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 20. Likewise, a trial court's order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo appellate review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. When reviewing a Civ.R. 12(B)(6)

motion to dismiss, the court may consider only the statements and facts considered in the pleadings and may not consider or rely on evidence outside of the complaint. *Brown v. Columbus City Schools Bd. of Edn.*, 10th Dist. No. 08AP-1067, 2009-Ohio-3230, ¶ 4. The court must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiffs. *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, ¶ 11. For the moving defendant to prevail, it must appear from the face of the complaint that the plaintiffs can prove no set of facts that would entitle them to relief. *Id.*

### B. First Assignment of Error

{¶ 16} Under his first assignment of error, appellant asserts he has standing to sue (1) under common-law standing because the threatened intra-class discrimination here is sufficient to meet the standard for an "injury," (2) under the Declaratory Judgment Act, R.C. 2721.03, or (3) by virtue of appellant being an active participant in Ohio's Ryan White Part B Program giving him a "real interest" in the subject matter under *State ex. rel Dallman v. Court of Common Pleas*, 35 Ohio St.2d 176 (1973).[3] As a preliminary matter, we note that the trial court also determined, as an independent basis to grant the motion to dismiss, that the claim is not ripe for review. Appellant did not appeal this holding. Regardless, for the following reasons, we disagree with appellant's arguments regarding standing.

### 1. Appellant's Alleged Threatened "Injury" Is Not Sufficient Under The Common-Law Standing Standard.

{¶ 17} Standing does not consider the merits of the plaintiff's claim but instead focuses on "whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc.*

---

[3] Although appellant raised an argument for statutory standing under 28 C.F.R. 35.130(b)(3) of the ADA at oral argument, appellant did not present a claim of discrimination under 28 C.F.R. 35.130(b)(3) in his complaint, argue this theory to the trial court in opposing the motion to dismiss, or brief this standing argument on appeal. "A party may not change its theory of the case and present new arguments for the first time on appeal." *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-709, 2013-Ohio-2742, ¶ 13. Neither may a party advance new arguments in its reply brief or at oral argument. *Id.*; *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 20, citing App.R. 12(A)(1)(b) and 16(A)(7). *See also* App.R. 21(I) ("If counsel on oral argument intends to present authorities not cited in the brief, counsel shall, at least five days prior to oral argument, present in writing such authorities to the court and to opposing counsel, unless there is good cause for a later presentment."). Therefore, we will limit our scope of review to examining those standing arguments asserted in appellant's brief.

*v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 7. Generally, to establish common-law standing, a plaintiff must show that they suffered "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore* at ¶ 22.

{¶ 18} Appellant argues that, contrary to the trial court's decision, the threatened intra-class discrimination here is sufficient to establish an injury to establish common-law standing. We disagree.

{¶ 19} Generally, threatened injuries, including threatened discrimination, may serve as an "injury" for common-law standing purposes.[4] *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469 (1999). Where a private litigant attacks the constitutionality of a legislative enactment, he or she must show threat of an injury in a manner or degree different from that suffered by the public in general. *Id.* at 469-70. However, the asserted threatened injury cannot be so remote as to be "merely speculative." *Wurdlow v. Turvy*, 10th Dist. No. 12AP-25, 2012-Ohio-4378, ¶ 15. Specifically, the plaintiff must show in the pleadings that he or she is threatened with "direct and concrete injury." *Sheward* at 469. *See also Stark-Tuscarawas-Wayne Joint Solid Waste Mgt. Dist. v. Republic Waste Servs. of Ohio II, LLC*, 10th Dist. No. 07AP-599, 2009-Ohio-2143, ¶ 24. Said another way, the plaintiff must demonstrate "a realistic danger arising from the challenged action." *Id.*, quoting *Johnson's Island Property Owners' Assn. v. Schregardus*, 10th Dist. No. 96APH10-1330 (June 30, 1997). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-65 (1992) (discussing the federal requirement that a threatened injury be "imminent"); *Clapper v. Amnesty Interntl. USA*, 133 S.Ct. 1138, 1150 (2013) (holding that in order to establish injury-in-fact based on a potential future injury, that injury must be "certainly impending," a test not established by the appellant's "speculative chain of possibilities").

{¶ 20} Here, the complaint alleges appellant is an Ohio resident living with an HIV infection who currently utilizes OHDAP, a program which supplies potentially life-saving drugs which can cost as much as $10,000-$40,000 per year, per patient.

---

[4] Under the public-right doctrine outlined in *Sheward*, a plaintiff may also assert threatened injuries involving issues "of great importance and interest to the public" without having to establish the common-law injury requirement of standing. *Id.* at 471. However, "the public-right doctrine applies only to original actions in mandamus and/or prohibition." *ProgressOhio.org, Inc.* at ¶ 10.

However, appellant does not plead information regarding the potential for a program funding shortfall to trigger those appendices which appellant alleges are discriminatory. Neither does appellant plead any information regarding his own medical or financial status showing whether and how possible implementation of the two appendices would affect him.

{¶ 21} We find, under these facts, that the threatened discrimination alleged is too remote to appellant to constitute an injury for purposes of common-law standing.[5] Therefore, appellant's argument based on an injury under common-law standing fails.

### 2. Appellant Failed To Establish The Three Prerequisites To Declaratory Relief Under Ohio's Declaratory Judgment Act, R.C. 2721.03.

{¶ 22} Appellant asserts that, as an active participant in Ohio's Ryan White Part B Program, he has standing under Ohio's Declaratory Judgment Act, R.C. 2721.03, and suggests that declaratory actions do not require the traditional "injury" standard. Pursuant to Ohio's declaratory judgment action statute, R.C. 2721.03:

> [A]ny person * * * whose rights, status, or other legal relations are affected by a * * * rule as defined in section 119.01 of the Revised Code * * * may have determined any question of construction or validity arising under the * * * rule * * * and obtain a declaration of rights, status, or other legal relations under it.

{¶ 23} A declaratory judgment action is a civil proceeding that provides a remedy in addition to other available legal and equitable remedies. *Wurdlow* at ¶ 12, citing *Walker v. Ghee*, 10th Dist. No. 01AP-960 (Jan. 29, 2002). A declaratory judgment action cannot be used to elicit a merely advisory opinion. *Id.* at ¶ 14. Thus, a plaintiff must plead "three prerequisites to declaratory relief": (1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights. *ProgressOhio.org, Inc.* at ¶ 19; *Moore* at ¶ 49 ("Courts have the duty to ensure that plaintiffs plead [three prerequisites to declaratory relief].").

---

[5] Appellant's proposed second amended complaint, denied by the trial court, offered additional information regarding whether appellant may be considered an "applicant" subject to Appendix A, regardless of his current enrollee status, but does not provide information bearing on the other injury impediments.

{¶ 24} Additionally, "[a]s with other forms of action, a plaintiff must establish standing as a proper plaintiff to seek declaratory relief." *Wurdlow* at ¶ 14. *See also Moore* at ¶ 49 ("Courts have the duty to ensure that plaintiffs plead [the three prerequisite] elements for purposes of declaratory-judgment actions and that the complaint sufficiently avers injury, causation, and redressability."); *ProgressOhio.org, Inc.* at ¶ 7, quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27 (" 'Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue.' ").

{¶ 25} Here, under this court's precedent in *Wurdlow*, a plaintiff must establish standing to seek declaratory relief and, as discussed throughout this decision, appellant has failed to do so.[6] *Id.* at ¶ 14. Moreover, appellant failed to show the "three prerequisites to declaratory relief"—controversy, justiciability, and necessity of speedy relief—at the pleading stage. *ProgressOhio.org, Inc.* at ¶ 17-19 (finding, in considering appellant's R.C. 2721.03 standing argument, that appellant failed to plead prerequisites to declaratory relief); *Moore* at ¶ 49 ("Courts have the duty to ensure that plaintiffs plead [three prerequisites] for purposes of declaratory-judgment actions * * *. [O]ur generosity is tempered by an insistence on sufficiency in the pleadings. If a party fails to establish any of the necessary showings to bring the claims, the judge must dismiss the cause.").

{¶ 26} Specifically, appellant provided information, previously discussed, which was insufficient to establish the "immediacy and reality" required to constitute a controversy. *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control*, 34 Ohio St.2d 93, 97 (1973), quoting *Peltz v. S. Euclid*, 11 Ohio St.2d 128, 131 (1967). The complaint also fails to establish justiciability, which includes consideration of whether the case is ripe for judicial review. *Natl. Park Hospitality Assn. v. Dept. of Interior*, 538 U.S. 803, 807-08 (2003), quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967) ("Ripeness is a justiciability doctrine designed 'to prevent the courts, through

---

[6] To the extent that appellant suggests R.C. 2721.03, the legislative source of a cause of action for declaratory relief, may also confer standing upon a plaintiff independently from other sources of standing, we note that this is an unsettled issue but one not dispositive under the facts of this case. *See ProgressOhio.org, Inc.* at ¶ 17-19; *Moore* at ¶ 48-49.

avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' "). As noted, the trial court ruled the case was not ripe, and appellant does not challenge this holding on appeal. Finally, without any information regarding the potential for a funding shortage and any information regarding appellant's medical status as it relates to Appendix A priority and financial status as it relates to Appendix B, the complaint here falls short of establishing the necessity of speedy relief to preserve appellant's access to program services. Therefore, in addition to not establishing standing, appellant has not pleaded the prerequisites to bring a declaratory action.

### 3. Appellant's Active Participation In Ohio's Ryan White Part B Program Does Not Provide Him With An Independent Source Of Standing Under The "Real Interest" Analysis In *Dallman*.

{¶ 27} Appellant appears to cite *Dallman* as an independent source for standing. The syllabus of *Dallman* states: "A party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action."

{¶ 28} Appellant does not provide authority showing how *Dallman,* which addresses a civil procedure requirement which may defeat standing, may also independently establish a new test for standing. *Id.* at 179. Moreover, the real-party-in-interest doctrine requires the plaintiff to show that he or she suffered an injury. *Mousa v. Mt. Carmel Health Sys., Inc.*, 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 12 ("Because a real party in interest is an individual who has suffered an injury in a matter, a party lacks standing if not a real party in interest."). *See also Shealy v. Campbell*, 20 Ohio St.3d 23, 24 (1985) (describing real party in interest as "one who is *directly* benefitted or injured by the outcome of the case"). (Emphasis sic.)

{¶ 29} Here, appellant's previously established lack of injury necessarily defeats his argument regarding having a "real interest" in the subject matter under *Dallman*. To the extent that appellant also asserts the rights of other participants within Ohio's Ryan White Part B Program, we note that a pro se plaintiff may generally only represent himself and

that, as discussed in footnote 4 of this decision, the procedural posture of this action does not permit claims under the public-interest doctrine outlined in *Sheward*. *Williams v. Griffith*, 10th Dist. No. 09AP-28, 2009-Ohio-4045, ¶ 15; *ProgressOhio.org, Inc.* at ¶ 9-10.

{¶ 30} Lastly, as an adjunct to his main standing arguments, appellant calls attention to the trial court's previous grant of injunctions at the outset of the case. Though the trial court did grant temporary and preliminary injunctions arising out of the original complaint, those rulings were particular to the allegations in that complaint pertaining to the lack of a hearing prior to enacting the rule, an issue not presented in the amended complaint, and do not bear on the standing issues brought on appeal.

{¶ 31} Accordingly, for the above-stated reasons, appellant's first assignment of error is overruled.

### C. Second Assignment of Error

{¶ 32} In his second assignment of error, appellant contends the trial court had a "*compulsory* duty" to determine whether the rule was constitutionally and statutorily valid and presents the substance of his claim that the rule violates the ADA, the Rehabilitation Act, and the Due Process Clause of the U.S. and Ohio constitutions. (Emphasis sic.) (Appellant's Brief, 17.)

{¶ 33} The law is clear that, before a court can address the merits of a claim, the litigant must establish standing to sue. *ProgressOhio.org, Inc.* at ¶ 7, 11; Article IV, Section 4(B), Ohio Constitution. As discussed in the first assignment of error, appellant has not established standing to sue. Therefore, the trial court was correct in refusing to address the merits of his claim.

{¶ 34} Accordingly, appellant's second assignment of error is overruled.

### D. Third Assignment of Error

{¶ 35} In his third assignment of error, appellant contends the trial court committed a procedural error "by stating that the Appellant had known that the court was awaiting on further information from the Appellant when all parties had known that this action was declaratory" and that court delay "obstructed the Appellant from receiving a final appealable order in a timely fashion," resulting in prejudicial error. (Appellant's Brief, 22, 23.)

{¶ 36} Beyond indication that a status conference was scheduled for January 29, 2014, the record on appeal contains no information from which this court could consider appellant's argument regarding a procedural error and how it impacted any alleged delay. Further, our review of the record shows the trial court promptly issued decisions and entries in response to the parties' filings prior to the stay of the proceedings in April 2013 and that appellant jointly filed a motion to stay the proceedings and then jointly requested to continue the stay in November 2013. As previously stated, we have no record of the January 2014 status conference. Under these facts and on this record, we are unable to find prejudicial judicial delay in the trial court's issuance of the decision and entry on November 21, 2014.

{¶ 37} Accordingly, appellant's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 38} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 39} I respectfully dissent from the decision of the majority, as I believe appellant has standing to bring his cause of action pursuant to the declaratory judgment statute, R.C. 2721.03. That section provides:

> [A]ny person interested * * * whose rights, status, or other legal relations are affected by a * * * rule as defined in section 119.01 of the Revised Code, * * * may have determined any question of construction or validity arising under the * * * rule, * * * and obtain a declaration of rights, status, or other legal relations under it.

{¶ 40} Appellant is an Ohio resident living with an HIV infection who currently utilizes a federal program administered through the state of Ohio, known in Ohio as the Ohio HIV Drug Assistance Program ("OHDAP"). OHDAP is a program that supplies drugs that can cost as much as $10,000-$40,000 per year, per patient. The majority finds that appellant does not plead information regarding the potential for a program

supply or funding shortfall that would trigger the application of the R.C. 119 rule appendices in question to "ration" medication to him according to supply. It is on this point that I diverge from the majority. His status and R.C. 2721.03 confer him standing.

{¶ 41} Article IV, Section 4(B), Ohio Constitution provides that the common pleas courts' jurisdiction is established by law:

> The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law.

It is the duty of the Ohio General Assembly to pass laws. "The legislative power of the state shall be vested in a General Assembly consisting of a Senate and House of Representatives but the people reserve to themselves the power to propose to the General Assembly laws." Article II, Section 1, Ohio Constitution. Further, Article II, Section 15(B), Ohio Constitution provides: "The style of the *laws* of this state shall be, 'be it enacted by the General Assembly of the state of Ohio.' " (Emphasis added.) When the legislature confers standing by a law, it is not the province of the court to dispel it. Appellant pled R.C. 2721.03 in his complaint and has sought a finding of constitutionality of the rule in question. With good reason, he does not wish to wait until his access to the potentially life-saving medication is threatened by either supply or funding. He has a right to have his case heard.

{¶ 42} A statute conferring standing and pled by a party in his complaint[7] can only be parsed so much to allow courts to avoid hearing matters concerning an administrative rule's validity. The majority cites *Wurdlow v. Turvy*, 10th Dist. No. 12AP-25, 2012-Ohio-4378, ¶ 15, for the proposition that a claimed injury cannot be so remote as to be "merely speculative." *Wurdlow* involved parking regulations, not access to life-saving medication. The interests involved and the damage that could occur by waiting until harm is imminent are not appropriately addressed by our reasoning in *Wurdlow*. That a threatened injury must be "imminent" or "certainly impending" takes on a different meaning in the context

---

[7] The plaintiffs in *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, did not plead statutory standing. "Appellants raised no claim of standing under R.C. 2721.03 in the lower courts." *Id.* at ¶ 18. Therefore, *ProgressOhio.org, Inc.*'s holding on declaratory judgment is inapposite as to appellant's situation.

of pharmaceutical protocols and their organic effects on patients with HIV. There is ample authority in case law that recognizes the status of individuals suffering from HIV, such that this distinction could have and should have been made. The majority's reasoning in applying the language in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-70 (1999), that appellant must show threat of an injury in a manner or degree different from that suffered by the public in general, fails to recognize that an individual living with HIV is not considered to be as the public in general.

{¶ 43} Other courts in determining constitutional questions have closely examined the nature of HIV. One such court, in the context of determining segregation of HIV from non-HIV prisoners, said this:

> The human immunodeficiency virus, or HIV, is a chronic disease. If left untreated, it weakens the immune system and eventually leads to death. The disease unfolds in several stages. Soon after contracting the virus, an infected person enters acute infection. During this time, the person's viral load (the extent to which the virus is present in the blood) rockets upward. People in this stage of the disease can have hundreds of thousands of copies of the virus. Despite that, people in this stage test negative for HIV. This phase, known as the "window period," generally lasts for a few weeks, but can extend as long as three months, and the people experiencing it represent the most infectious group of individuals with HIV.
>
> Acute HIV gives way to chronic-HIV infection. During this stage, the viral load lowers. The final stage, advanced-HIV infection, occurs when the body's CD4 T-cells, which play a critical role in the immune system, drop to low levels and the viral load rises. More commonly, this final stage is known as acquired immunodeficiency virus, or AIDS.
>
> HIV emerged in the United States in the early 1980s and soon grew into an epidemic. HIV inevitably progressed to AIDS. Virtually everyone infected died. Meanwhile, no one, including the medical community, understood how HIV was transmitted. Fearing that even casual contact could spread it, doctors treating patients with HIV wore protective gear so extensive it was nicknamed a "space suit." The profound consequences of the disease, combined with lack of knowledge

about how it could spread, created an era of hysteria in the epidemic's early days.

The tide began to turn in the decade that followed. In 1996, the first protease inhibitors were approved to treat HIV. Highly active antiretroviral therapy (HAART), emerged as an effective weapon against the disease. These treatments did not eliminate the virus, but they did restrict its ability to progress and could stave off AIDS. However, while important developments, early treatment combinations had many deficiencies. The medications had to be administered multiple times each day; they had severe side effects, including diarrhea and peripheral neuropathy; and because the regimes were so complicated and so punished patients with side effects, many HIV patients failed to take their medication.

Today, advances in HIV treatment have profoundly changed the disease. There is still no cure for HIV: indeed, there is only one known case in which a person was completely cured of it. However, modern treatment regimes have rendered it manageable. The vast majority of HIV patients can be treated by one pill once a day; side effects are less severe, and, where they do occur, multiple treatment options allow patients to try different medications until they find one that works; and, most importantly, *although people with HIV will require treatment for their entire lives*, HIV is no longer invariably fatal. People who receive treatment for HIV can expect to enjoy near-normal lifespans.

(Emphasis added; footnote deleted.)  *Henderson v. Thomas*, 913 F.Supp.2d 1267, 1276-77 (M.D.Ala.2012).

{¶ 44} No one, including appellant, can determine with any degree of certainty a state budget's viability or the industry factors affecting the availability of medication administered by the state under a federal program.  Such forces lie outside of any one individual's control.  While the federal program may "go away," a state's decisions in how to administer it while it is here are subject to review.  Based on the nature of the disease, appellant's "injury" is established by his status.  He is a participant in a program and his access to medication administered by it is subject to loss according to a state promulgated rule.  He has a right to challenge how that rule's implementation will affect him.  Were appellant to wait to file suit until supply shortages were imminent, he could be threatened

with interruption of a sustained therapeutic medical protocol, having to wait for the outcome of the litigation. Additionally, he could be confronted with a defense of laches for not having brought this suit in the aftermath of challenging the rule at the administrative level through procedures set forth in R.C. Chapter 119.

{¶ 45} Courts cannot deny standing when the legislature has conferred it through statutes such as R.C. 2721.03, the declaratory judgment statute. The power of the common pleas court to determine the constitutionality of the rule should have been exercised. " 'It is the right and *duty* of judicial tribunals to determine, whether a legislative act drawn in question in a suit pending before them, is opposed to the constitution of the United States, or of this State, and if so found, to treat it as a nullity.' " (Emphasis added.) *Ohio Academy of Trial Lawyers* at 466, quoting *Cincinnati, Wilmington & Zanesville RR. Co. v. Clinton Cty. Commrs.*, 1 Ohio St. 77 (1852), paragraph one of the syllabus. In considering constitutional questions, courts decide whether rules or statutes are unconstitutional on their face or as applied.

> "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Leslie v. Lacy*, 91 F.Supp.2d 1182, 1185-86 (S.D.Ohio 2000) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L.Ed.2d 697, 107 S.Ct. 2095 (1987)).
>
> To establish a facial violation, a challenger "has to show that the provisions were wholly inadequate to protect due process rights[.]" *Leslie*, 91 F.Supp.2d at 1186 (quoting *Nelson v. Diversified Collection Serv*[*s*]*., Inc.*, 961 F.Supp. 863, 868 (D.Md.1997)). "A statute can violate procedural due process rights as applied if the notice and opportunity to be heard either were not provided to the plaintiff or their provision was inadequate." *Id.*

*Allen v. Leis*, S.D.Ohio No. C-1-00-261 (June 13, 2001). A challenge to a legislative act "as applied" must accord with the "well-established principle that statutes will be interpreted to avoid constitutional difficulties." *Id.*, citing *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 514 (1989), and *Frisby v. Schultz*, 487 U.S. 474 (1988). The trial court had a duty to make both analyses in appellant's situation.

{¶ 46} I would reverse the judgment of the trial court and deny the motion to dismiss on the issue of standing.

_____