[Cite as *Djordjevic v. State Med. Bd. of Ohio*, 2021-Ohio-3341.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Borko Djordjevic, M.D., | : | |
| Appellant-Appellant, | : | |
| | | No. 20AP-413 |
| v. | : | (C.P.C. No. 19CV-9110) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on September 23, 2021

**On brief:** *Brandon M. Smith* and *James M. McGovern*, for appellant.

**On brief:** *Dave Yost*, Attorney General, and *Lindsay Miller*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant, Borko Djordjevic, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming a decision of appellee, the State Medical Board of Ohio ("the board") that granted appellant's application for reinstatement of his medical license subject to certain conditions. For the reasons outlined below, we affirm.

{¶ 2} Appellant received his medical degree from the University of Belgrade in Serbia in 1968. He moved to the United States in 1970 and subsequently obtained medical licenses in several states, including California, New Jersey, New York, and Ohio. His Ohio license, issued in 1975, expired in 1990 due to non-renewal. From 1977 to 2007, appellant

practiced medicine in California, specializing in plastic surgery. From March 2008 to the present, appellant has practiced medicine, exclusively plastic surgery, in Montenegro.

{¶ 3} In September 2007, appellant entered into a settlement agreement with the Medical Board of California, pursuant to which his medical license was revoked, with the revocation stayed; his license was suspended for three months and he was placed on probation for seven years. In June 2008 and August 2009, appellant entered into settlement agreements with the New Jersey State Board of Medical Examiners and the New York State Board for Professional Misconduct, respectively, pursuant to which his medical licenses in those states were suspended for a minimum of seven years, subject to conditions for reinstatement. The 2007 California order served as the basis for the New Jersey and New York orders.

{¶ 4} On August 29, 2016, appellant submitted an application seeking reinstatement of his Ohio medical license. In a letter dated March 8, 2017, the board notified appellant of its intention to determine whether to grant or refuse his application for reinstatement of his medical license. Citing the California, New Jersey, and New York disciplinary actions, the letter noted that R.C. 4731.22(B)(22) authorizes the board to refuse to reinstate a physician's medical license if the physician's license in another state has been sanctioned by another state's regulatory body.

{¶ 5} Following an administrative hearing, the board issued an order on November 8, 2017 granting reinstatement of appellant's license on the condition that he pass the Special Purpose Exam ("SPEX")[1] within six months of the effective date of the order. The order apprised appellant that failure to successfully complete the SPEX within the six-month period would be considered by the board as an abandonment of the application for reinstatement. The board further ordered that in the event appellant passed the SPEX and was granted reinstatement of his license, such license would be limited and restricted until he successfully completed a four-month preceptorship with a board-certified plastic surgeon, including one month of observation and three months of patient care under direct supervision. The board further ordered that appellant's license would be placed on probation for a minimum of two years with a number of probationary terms

---

[1] The SPEX is administered by the National Board of Medical Examiners.

including completion of a board review course in plastic and reconstructive surgery as well as a board-approved practice plan and monitoring physician.

{¶ 6} Appellant took the SPEX on May 15, 2018; he did not obtain a passing score. Thus, pursuant to the board's order, his application for reinstatement was deemed abandoned.

{¶ 7} On October 8, 2018, appellant submitted a new application seeking reinstatement of his Ohio medical license. In a letter dated December 12, 2018, the board again notified appellant of its intention to determine whether to grant or refuse his application for reinstatement; the board again noted that pursuant to R.C. 4731.22(B)(22), it could refuse to reinstate his license based on the California, New Jersey, and New York disciplinary actions. The board recounted the 2016-2017 proceedings in detail, including appellant's failure to pass the SPEX within the allotted six-month period as set forth in the November 2017 order, which triggered the abandonment of his 2016 application. Appellant requested and received a hearing on his new application for reinstatement.

{¶ 8} Appellant, along with a medical colleague and an attorney who represented him in certain proceedings related to the California disciplinary action, provided testimony at the hearing. In addition, stipulated exhibits related to the 2016-2017 administrative proceedings were admitted into evidence. After the hearing, the hearing examiner issued a report and recommendation proposing that the board issue an order mirroring its November 2017 order. Citing the static nature of appellant's circumstances since the 2016-2017 proceedings, the hearing officer found no reason to diverge from the board's previous order granting reinstatement of appellant's license conditioned upon his successful completion of the SPEX within six months of the effective date of the order and placing restrictions on his license if it were reinstated. The hearing examiner rejected appellant's request that he be granted unlimited time to successfully complete the SPEX, reasoning that the board should not hold open applications indefinitely on the hope that a physician might eventually meet a licensure requirement. The hearing examiner also found reasonable the license restrictions requiring a four-month preceptorship followed by a practice plan with a monitoring physician. Recognizing that the preceptorship might impose a temporary hardship on appellant, the hearing examiner nonetheless concluded that the board's duty to ensure that the physicians it licenses are capable of practicing to

minimal standards of care was paramount. In so concluding, the hearing examiner noted that appellant had not practiced medicine in the United States since late 2007 and had failed to pass the SPEX. The hearing examiner found a monitoring period to be logical under the circumstances, given appellant's intention to open a solo practice rather than join a group practice.

{¶ 9} Appellant filed objections to the hearing examiner's report and recommendation. Specifically, appellant objected to the hearing examiner's proposal that the board issue an order mirroring the SPEX, preceptorship and monitoring physician/practice plan requirements and the probationary terms set forth in the November 2017 order. Regarding the SPEX, appellant urged the board to allow him a 12-month window to successfully complete it. Appellant challenged the preceptorship and monitoring physician/practice plan requirements as impractical and unnecessary. Appellant argued that no board-certified plastic surgeon will be willing to spend four months serving as a preceptor for a physician over the age of 70, and that unless he joins a group practice, no physician will be willing to monitor and directly supervise him for the two-year probationary period. Appellant proposed as an alternative to the preceptorship and monitoring requirements that the board order him to complete the Physician Assessment and Clinical Education Program ("PACE") offered by the University of California San Diego.

{¶ 10} At a board meeting held on October 16, 2019, appellant's attorney reiterated the arguments raised in the objections to the hearing examiner's report and recommendation.[2] Following deliberations, the board adopted the hearing examiner's findings of fact and conclusions of law, with an amendment allowing appellant 12 months to successfully complete the SPEX, with the privoso that failure to do so would be deemed an abandonment of the application for reinstatement. The board issued its order, as amended, on October 16, 2019.

{¶ 11} Appellant appealed to the common pleas court, arguing that the board's order was not supported by reliable, probative, and substantial evidence and was not otherwise in accordance with law. The common pleas court affirmed the board's decision. In so doing, the court, citing *Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959),

---

[2] Appellant did not attend the board meeting.

noted that its review was limited to whether the board's order was supported by reliable, probative, and substantial evidence and was in accordance with law; if so, the court may not modify the board's order and must affirm it. The court determined that the sanctions imposed by the board for appellant's violations of R.C. 4731.22(B)(22) were supported by reliable, probative, and substantial evidence and were in accordance with law. Accordingly, the court concluded that "as it should be well known, this Court lacks the authority to modify a valid sanction supported by the evidence." (Aug. 10, 2020 Decision & Entry, at 9.)

{¶ 12} Appellant appeals to this court and assigns one error for our review:

> The lower court abused its discretion when it determined the order was issued in accordance with law and that *Henry's Café* foreclosed further examination.

{¶ 13} In an R.C. 119.12 administrative appeal, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law. *Shah v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-147, 2014-Ohio-4067, ¶ 9, citing *Macheret v. State Med. Bd. of Ohio*, 188 Ohio App.3d 469, 473-74, 2010-Ohio-3483 (10th Dist.). On appeal to this court, however, the standard of review is more limited. *Abunku v. State Med. Bd.*, 10th Dist. No. 11AP-906, 2012-Ohio-2734, ¶ 16. In reviewing the common pleas court's determination that the board's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the common pleas court abused its discretion. *Id.*, citing *Roy v. Ohio St. Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). An abuse of discretion means more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). " 'On questions of law, however, the common pleas court does not exercise discretion and the court of appeals' review is plenary.' " *Abunku* at ¶ 16, quoting *Landefeld v. State Med. Bd.*, 10th Dist. No. 99AP-612 (June 15, 2000).

{¶ 14} In his brief, appellant avers that "[he] does not dispute that the 2019 Order was based on reliable, probative, and substantial evidence. Rather, he disputes that—given the unique circumstances of his case and the current state of the world—the 2019 Order was not issued in accordance with law." (Appellant's Brief at 4.) Appellant further states

that "[he] does not dispute any of the factual allegations contained in the relevant Notice of Opportunity for Hearing. However, the sanction imposed based on those facts is contrary to law." *Id.* at 7-8.

{¶ 15} Specifically, appellant contends, as he did in the common pleas court, that the board's imposition of the "narrow" 12-month window for passing the SPEX "poses a substantial risk of [appellant] not passing the SPEX within the allotted time and having to submit a third application to restore his medical license in Ohio, followed by another hearing similar to the hearings that preceded the 2017 and 2019 Orders." *Id.* at 8-9. Appellant maintains that this scenario is "even truer today than at the time the 2019 Order was issued," given the impediments to testing associated with the COVID-19 pandemic, such as the shuttering of testing sites, the inherent risks of a septuagenarian physician attending an in-person examination, and the unreasonableness of international travel. *Id.* at 9.

{¶ 16} Appellant further contends that the preceptorship and practice monitoring requirements "will be difficult, if not impossible, for [appellant] to complete." *Id.* at 9. As he did in his objections to the hearing examiner's report and recommendation and his common pleas court brief, appellant maintains that no board-certified plastic surgeon will be willing to spend four months serving as a preceptor for a physician of his age and experience, and, unless he joins a group practice, it is unlikely any physician will be willing to monitor and directly supervise him for the two-year probationary period. Appellant argues that "[t]he preceptorship and monitoring requirements of the 2019 Order all but ensure that [he] will never practice in Ohio again." *Id.* at 9-10. Appellant further asserts that the board "imposed these onerous restrictions despite the availability of the * * * PACE Program * * * [which] would provide substantially similar assurances that [he] is up to date on his knowledge and capable of practicing safely, but without the pitfalls inherent in the preceptorship and practice monitoring requirements." *Id.* at 10.

{¶ 17} Appellant summarizes his argument on pages 10 and 11 of his brief:

> The 2019 Order is likely to leave [appellant] trapped in a perpetual cycle of application and denial. For the reasons outlined above, the conditions of the 2019 Order are unlikely ever to be met by [appellant]. Additionally, the conditions imposed by the 2019 Order are entirely unrelated to ensuring that [appellant] can safely practice the specialty he has been

> actively practicing since 1977. Accordingly, while the 2019 Order's impact may be relatively benign on its face, the 2019 order is likely to forever foreclose [appellant]'s practice of medicine in Ohio. The 2019 Order imposed a sanction contrary to law and the lower court abused its discretion when it held otherwise.

{¶ 18} At oral argument before this court, appellant advanced a different legal theory than that argued below and in his appellate brief. Appellant maintained that the board's order is not in accordance with law because R.C. 4731.22(B) only authorizes the board to grant or deny an application for reinstatement. According to appellant, under the terms of the board's order, his failure to successfully complete the SPEX does not result in either the grant or denial of his application; rather, such failure results in the abandonment of his application. In other words, the board's order does not definitively grant or deny his application, which, according to appellant, are the only two options available to the board under the authority of R.C. 4731.22(B); rather, the board's order simply provides him the opportunity for his application to be granted via successful completion of the SPEX, and, in the event he does not do so, the board imputes upon him the intent to abandon his application. Appellant posited that under R.C. 4731.22(B), the board had the authority to grant the application for reinstatement and then indefinitely suspend that grant with conditions for reinstatement; however, that is not what the board did in this case.

{¶ 19} Appellant further averred that while the board had authority under R.C. 4731.222[3] to require conditions such as those imposed by the board in his case upon an applicant seeking restoration of a medical license, the board did not initiate the proceedings against him under that section; rather, the board initiated proceedings under R.C. 4731.22(B), which does not authorize the board to impose what he characterizes as a "conditional" grant of reinstatement.

---

[3] R.C. 4731.222(A)(1) applies to applicants seeking restoration of a medical license "that has been in a suspended or inactive state for any cause for more than two years." R.C. 4731.222(B) provides that "[b]efore * * * restoring a license or certificate to good standing for an applicant subject to this section, the state medical board may impose terms and conditions," including as applicable here, "[r]equiring the applicant to pass an oral or written examination, or both, to determine the applicant's present fitness to resume practice." R.C. 4731.222(B)(1). It is unclear whether R.C. 4731.222 even applies to the present case. Appellant's Ohio medical license "expired" in 1990. For the reasons discussed infra, we need not determine whether an "expired" license equates to a "suspended or inactive" license.

{¶ 20} When questioned by the panel as to whether he properly preserved these arguments below and in his appellate brief, appellant asserted that he did so when he referenced *Henry's Café*, 170 Ohio St. 233, and argued that the board's order was not "in accordance with law." At oral argument, appellant noted the determination in *Henry's Café* that a reviewing court is prohibited from modifying a sanction that an agency has statutory authority to impose if reliable, probative, and substantial evidence supports the agency's order. *Id.* at paragraphs two and three of the syllabus. Appellant maintained that his argument was directed at the first step of the *Henry's Café* analysis, i.e., that the board imposed a sanction that it did not have statutory authority to impose—a conditional grant of an application for reinstatement. According to appellant, because the board's order fails the first step of the *Henry's Café* analysis, the common pleas court erred in determining that it was prohibited from modifying the sanction imposed by the board.

{¶ 21} Upon careful review of the briefs filed by appellant both below and in this court, we are not persuaded that appellant properly preserved the legal theory he promoted at oral argument. Appellant did not cite *Henry's Café* in his common pleas court brief, and his *Henry's Café* argument in his appellate brief was that "at first blush, the case at bar appears to be one requiring only a straightforward application of *Henry's Café*. Crucially, however, the court in *Henry's Café* eliminated from its consideration the phrase 'in accordance with law' because the issue was not raised before it." (Appellant's Brief at 6, citing *Henry's Café* at fn. 2.) Apparently, appellant expects this court to glean from those statements the argument he articulated in much greater detail at oral argument. However, as pointed out by the panel, appellant did not cite either R.C. 4731.22(B) or 4731.222 in his briefing. Indeed, neither statute is cited in the "Table of Authorities" or in the argument section of the brief. In essence, appellant argued both below and to this court that the conditions imposed upon him were unreasonable, impractical and too onerous—not that the board did not have the statutory authority to order a "conditional" grant of reinstatement. This court has stated that " '[a] party may not change its theory of the case and present new arguments for the first time on appeal.' " *Simmons v. Budde*, 10th Dist. No. 14AP-846, 2015-Ohio-3780, ¶ 10, quoting *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 12AP-709, 2013-Ohio-2742, ¶ 13. Nor may a party advance new arguments during oral argument. *Id.*, citing *Clifton Care* and *Andreyko v. Cincinnati*,

153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 20, citing App. R. 12(A)(1)(b) and 16(A)(7). *See also Hamilton v. Ohio Dept. of Health*, 10th Dist. No. 14AP-1035, 2015-Ohio-4041, ¶ 16, fn. 3; *State v. Dixon*, 12th Dist. No. CA2016-04-074, 2016-Ohio-7438, ¶ 17, fn 3. Therefore, this court will not address appellant's new theory raised for the first time during oral argument.

{¶ 22} Appellant's only argument in his brief to this court is that the conditions placed on the grant of his request for reinstatement are unreasonable because it would be difficult for him to satisfy the conditions—and therefore, the conditions are contrary to law. His brief advances no other argument as to why the conditions on reinstatement violate any statute or are otherwise contrary to law. Appellant has cited no legal authority, nor are we aware of any, that would permit this court to find that an order that places conditions on the grant of an application for reinstatement is contrary to law simply because it might be difficult for the applicant to comply with the conditions.

{¶ 23} Appellant does not dispute that R.C. 4731.22(B) authorized the board to determine whether to grant or refuse his application for reinstatement or that R.C. 4731.22(B)(22) authorized the board to refuse to reinstate his medical license if other states' regulatory bodies took disciplinary action against his medical licenses in those states. Further, appellant does not dispute that reliable, probative, and substantial evidence demonstrated that adverse actions were taken by the medical regulatory boards in California, New Jersey, and New York. Based on those adverse actions, the board could have refused to reinstate his medical license. Instead, the board granted appellant's application for reinstatement upon the condition that he successfully complete the SPEX within a 12-month timeframe and imposed restrictions on his license if it were reinstated. Because the board's order is supported by reliable, probative, and substantial evidence and is not contrary to law, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

_____